Luz Francia Collazo Vélez et al., Petitioners, *v.* Superior Court of Puerto Rico, Arecibo Part, Cándido Ceballos, Judge, Respondent.

No. C-65-102.     Decided February 23, 1967.

*Héctor Reichard* and *Héctor Reichard, Jr.*, for petitioners.
*Dennis Martínez Irizarry* for interveners.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

To secure a loan of $60,000 principal, its interest and an additional credit of $5,000 for costs, expenses, and attorney's fees in case of judicial claim, Mr. Elías Llerandi Rivero and his wife constituted a mortgage in behalf of Mr. José Collazo Bracero on a real property and its equipment located in the city of Arecibo, according to deed No. 7 executed in San Juan on September 25, 1959, before Juan B. Soto, Notary. The mortgage in behalf of Mr. Collazo Bracero who appeared in the deed as widower, was recorded in the Registry of Property.

On September 10, 1964, the Aguadilla Part of the Superior Court declared who were the sole and universal heirs *ab intestato* of Mr. José Collazo Bracero, deceased on January 8, 1962. His heirs were his children and a grandson in representation of a predeceased son. By deed No. 273 executed in Lares on August 10, 1964, before Notary Luis Garrastegui, the heirs proceeded to the partition of the inheritance. The mortgage credit of $60,000 was adjudicated in said partition to certain children, all surnamed Collazo

Vélez, and to his grandson, Wilson Collazo Viñas. The inheritance tax was paid.

On February 15, 1965, the grantees of the credit, already due since September 25, 1964, appeared in the Arecibo Part of the Superior Court to institute a summary foreclosure proceeding against the heirs of the debtor, Mr. Elías Llerandi Rivero, already deceased. They claimed the payment of the principal of the loan, its interest, and $5,000 agreed upon for costs, expenses, and attorney's fees. On the same date the Arecibo Part of the Superior Court issued the corresponding writ demanding payment of said amounts.

On April 15, 1965 the debtors appeared in the summary foreclosure and stated that they were served with notices of the proceedings by the marshal on February 18, 1965 but that they had never been served with process; that at the time of filing the initial petition and when the writ demanding payment was issued the mortgage credit appeared recorded in the Registry in behalf of José Collazo Bracero and the plaintiffs were not in a condition to execute the corresponding deed of cancellation because it was not recorded in their behalf and also because the deed by which it was adjudicated to them was not recordable. At that hearing the defendants proceeded to deposit in court the amounts claimed in the foreclosure proceeding and requested that the deposit be considered voluntary, that the cancellation of the mortgage be ordered, and that it be declared that they were not bound to pay the sum of $5,000 stipulated for costs, expenses, and attorney's fees inasmuch as the court lacked jurisdiction to issue writ demanding payment because the credit did not appear recorded in behalf of the foreclosing party.

Some days later the plaintiffs appeared, considered the deposit properly made, requested that the sum of $60,600 principal and interest be delivered to them and that in due time the court determine whether the payment of the credit of $5,000 for costs was proper. On July 21, 1965 the trial

court entered an Order dismissing the debtors' contention that the amount for costs was improper. We issued writ of certiorari to review said Order.

Article 128 of the Mortgage Law provides, as to the summary mortgage foreclosure that the judicial proceedings preliminary to the sale shall consist in the presentation by the creditor of a petition to the judge or court of competent jurisdiction of the place in which the property may be situated, "accompanied by the loan instrument containing a note of the record thereof," and by a certificate issued by the registrar of property to the effect that his books do not show the cancellation of the mortgage at the time of the maturity thereof.

Article 169 of the Mortgage Regulations which complements it provides the other requirements and prescribes that the following shall be presented with the initial petition in the proceedings: (1) "evidence of legal capacity to sue," including the power of attorney of the solicitor, if the creditor or his legal representative does not appear in person; (2) "the instrument or instruments evidencing the credit, with a memorandum of their record and with the formalities which the Law of Civil Procedure prescribes to authorize writs of execution"; (3) a certificate issued by the registrar of property of a date subsequent to that of the maturity of the obligation, establishing that the mortgage has not been canceled, and is not awaiting cancellation, according to the daybook. This certificate must also contain a true copy of the records of any other rent charges, mortgages . . . "as well as the records of the conveyance of the estates to third persons."

■ Aside from the certificate of the Registrar establishing the preceding facts, the only other information of the Registry that Art. 128 of the Law as well as Art. 169 of the Regulations require to be presented with the initial petition is the *note of the record of the credit instrument*, that

is, of the deed of the mortgage loan. The requirement is explicable in view of the fact that the record of the credit in the Registry constitutes a substantive element of the mortgage property right constituted in favor of the creditor. Without such registration, the mortgage property right which directly and immediately binds the property upon which it is imposed whoever the possessor of the property may be, does not arise—Art. 105 Mortgage Law; § 1775 Civil Code (1930 ed.)—not only for the purposes of third persons, but as to the right among the parties themselves.[1]

Petitioners maintain that the plaintiffs did not have legal capacity to foreclose because the credit was not recorded in their name. Article 169 of the Regulations requires that evidence of legal capacity to sue be presented with the initial petition. Referring to the provision, Professor Jaime Guasp says in his known work, *La Ejecución Procesal en la Ley Hipotecaria* (1951), commenting on that particular, at p. 122: "Among the former there are those which serve to establish the conditions which should be present in the plaintiff. As it is technically known it is possible to include therein: capacity to be a party, capacity to sue, genuineness in cause, and the power to practice law. . . . But, what should be understood for the purposes of the Mortgage Law by 'evidence of the legal capacity'? Proof of the capacity to be a party, of the capacity to sue, of the genuineness, and of the power to practice law, or only these last two concepts? It is advisable to believe the latter and thus the phrase 'Evidence of the

---

[1] Article 146 of the Mortgage Law provides: "In order that voluntary mortgages may be validly constituted it shall be necessary:

(1) . . . . . . . .

(2) That the deed shall have been recorded in the registry established by this Law."

Section 1774 of the Civil Code, 1930 ed. provides: "Besides the requisites mentioned in section 1756, it is indispensable, in order that the mortgage may be validly constituted, that the instrument in which it is created be entered in the registry of property."

legal capacity' is reduced to this hypothesis, to the proof of its genuineness properly speaking (character); and to the power to practice since he acts through the solicitor."

Hereinafter, referring to the duty that Art. 170 of our Regulations imposes upon the judge to examine the petition and the documents supporting it and that if he shall hold that the requirements of the law have been complied with, he shall make an order, without further proceedings, summoning the persons who, according to the certificate of the registry, are in possession of the mortgaged property, whether it is in the hands of the debtor, or whether it has been transferred to a third person in whole or in part in order that they may make the payment within a period of 30 days; . . . and that if he should hold that such requirements have not been complied with, he shall also enter an order denying the petition, Don Jaime Guasp comments that the judge's powers are extended [p. 128] . . . "2 to the examination of the conditions that the parties should have; the capacity to be a party, the capacity to sue, the genuineness in cause (whether the creditor is in effect the one who should claim and the debtor the one who should endure the foreclosure) and the power to practice, inasmuch as the interested party must avail itself of the solicitor and of an attorney at law." And he points out that "the judgment as to the existence of such premises will be formed by the judge on the basis of the instruments ('evidence of the legal capacity') that the plaintiff should present."

■ In this case the foreclosing parties established their capacity to claim. They attached to the initial petition, together with the instrument evidencing credit in behalf of their predecessor with a note of registration, the aforementioned deed No. 273 of Partition of Inheritance wherein they were adjudicated title to said credit, as well as the receipt of the Secretary of the Treasury establishing payment of the inheritance tax, and a certified copy of the order

of the Aguadilla Part of the Superior Court declaring them heirs of the owner of the credit. The real action for summary mortgage foreclosure stems from the instrument evidencing credit, that is, from the loan deed with its note of record, not from the foreclosing party's capacity to sue, since at times there will be those who have it and at other times those who have not. Of course, the capacity to foreclose must be shown as part of the facts to be considered by the judge before issuing the writ demanding payment.

Article 152 of the Mortgage Law provides that the mortgage credit may be conveyed or assigned to a third person in whole or in part, "provided it be effected by means of a public instrument, notice of which is given to the debtor, and that it be recorded in the registry . . . . The assignee shall be subrogated to all the rights of the assignor."

█ Unlike the mortgage which, if not recorded is not validly constituted even among the parties themselves, the record of the assignment of mortgage credit does not partake of such constitutive nature for the purposes of the validity of the assignment. Referring to the three requirements imposed by Art. 152, Roca Sastre comments, IV *Derecho Hipotecario* 570 (5th ed., 1954): "According to the language of this provision, there is no assignment of mortgage credit without complying with these three requirements, but as a matter of fact it is not so, for the same are necessary only for the assignment to produce effects against *third persons* and with respect to the respective debtor." Further: "The record of the assignment is only a necessary requirement to produce *effects against third persons.*"[2]

---

[2] Morell subscribes to the same view and explains it clearly comparing the assignment of the credit with the submortgage, which like in the case of the mortgage, the record of the submortgage is a constitutive element of its validity. He says in his IV *Comentarios a la Legislación Hipotecaria,* 1918, at p. 230: "The assignment of the mortgage credit cannot be mistaken by the submortgage. In the former, the active subject of the relationship changes, the latter remaining the same: a new creditor substitutes

■ Even though the requirement to record the assignment of a mortgage credit provided by Art. 152 were applied to plaintiffs, the fact that deed No. 273 of Partition of Inheritance was not recorded could have effects as to third persons, but it would not affect their cause of action to foreclose because, we repeat, such recording would not establish the validity of the assignment. Here they did not act against third persons. On the other hand, in the information of the registry required by Arts. 128 of the Law and 169 of the Regulations for the issuance of the writ demanding payment, there is no provision for the presentation of the note of record of the assignment of a mortgage credit. Plaintiffs could establish their legal capacity as foreclosing party with the necessary evidence to satisfy the judge that they were the owners of the credit, although it was not yet recorded in their name. They did this with authentic evidence.

■ In addition to the foregoing, the case here is that the plaintiffs were not transactional assignees of the credit. They were the person of the creditor prolonged after his death in his heirs.[3] As such they could foreclose the mortgage in behalf of their predecessor upon establishing that they are the heirs and owners.

---

the original one. In the submortgage a new and independent relationship is created; there is a second creditor but the first one does not disappear. The assignment transfers the mortgage on the property; the submortgage supposes substitution of a new mortgage on the mortgage right which encumbered the former.

"The unrecorded assignment of the mortgage credit does not prejudice a third person. The submortgage is not valid, not even among the interested parties, as long as it is not recorded."

[3] Roca Sastre comments, *op. cit.*, p. 569: "Upon speaking of assignment or alienation of mortgage credit it means the conveyance made by a *juristic act*, not the one produced by *operation of the law* (hereditary succession) . . . which is governed by special rules." (Italics of the author.) See: §§ 599, 600, 603, and 610, Civil Code, 1930 ed.

Morell, *op. cit.*, p. 111, in a reference to the instruments which should be attached, says, in passing, that if the mortgage has been transmitted by "inheritance" or contract, the interested person should present his acquisition title recorded. This does not seem to be an accepted view.

██ Petitioners are right in maintaining that there was never at law a service of process. The service by the marshal of the writ for demand of payment is a certificate of a summons in an ordinary action. If there had been in this case an auction and a foreclosure sale, unquestionably the summary foreclosure would have been void. However, the debtors appeared voluntarily and paid the required amounts precluding a sale. With the filing of the initial petition the judicial claim was performed. This rendered enforceable the liquid sum of $5,000 for costs in case of such claim, agreed upon in the deed of the loan, the court having issued a valid writ of demand of payment with jurisdiction therefor.[4]

For the foregoing reasons, the writ of certiorari issued is quashed and the Order entered by the Arecibo Part of the Superior Court on July 21, 1965 refusing to deliver to petitioners the amount of $5,000 agreed upon for costs in the foreclosure remains in full force and effect.

---

[4] Petitioners maintain that they did not know to whom they should pay the credit at its maturity because the plaintiffs had not recorded the partition, and that at the time the initial petition was filed they could not give the cancellation deed according to the registry. If that was the situation and they wanted to be freed from the cost credit, they had the deposit as a remedy. In the brief the foreclosing parties set forth, without it having been contradicted by the petitioners, that the debtors were aware of the partition deed, and it appears that they were extrajudicially requested by the heirs to pay the credit due.